UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KETURAH TAWANA MIXON,

           Plaintiff,                                  Hon. Hala Y. Jarbou

v.                                          Case No. 1:25-cv-1552

BANK OF AMERICA, N.A., et al.,

           Defendants.

_____/

## REPORT AND RECOMMENDATION

This action is pro se Plaintiff Keturah Mixon's most recent effort to thwart a foreclosure of a mortgage on her residence that she previously agreed could proceed. In pursuit of that goal, in her First Amended Complaint, Mixon has sued Bank of America, N.A. (BANA), Trott Law, P.C. and Trott attorney Michelle Clark, and NewRez, LLC. (ECF No. 12.) Mixon alleges the following federal-law claims: (1) mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1342 (Counts II and III); (2) violation of her First and Fourth Amendments under 42 U.S.C. § 1983 (Count IV); (3) violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* (Counts XI and XII); (4) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 (Count XIV); and (5) violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* (Count XV). Mixon also invokes the Court's supplemental jurisdiction over a number of state-law claims.

Presently before me are (1) NewRez, LLC's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 14); (2) Trott Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (ECF No. 18); and BANA's Motion to Dismiss pursuant to Rules 8(a)(2), 9(b), and 12(b)(6) (ECF No. 22). The motions are fully briefed and ready for decision. For the reasons that follow, I

1

recommend that the Court **DISMISS** this action on the basis that Mixon lacks Article III standing and/or because the Court lacks jurisdiction. Alternatively, I recommend that the Court **GRANT** Defendants' motions and dismiss the First Amended Complaint in its entirety for failure to state a claim. Finally, I recommend that the Court impose a limited filing restriction on Mixon as set forth below.

## I.  Background

This matter, which dates back to 2010, has an extensive litigation history.

### A.    The Mortgage Loan and Mixon's 2015 and 2018 Actions

I previously summarized the factual background and Mixon's prior actions as follows:

On January 29, 2010, Andrew A. Askler and Arthur J. Quinn conveyed the Property to Defendant Mixon by warranty deed for the sum of $121,000.00. (ECF No. 1 at PageID.3; ECF No. 1-1.) Mixon financed the purchase with a loan in the amount of $118,800.00 from Top Flite Financial Inc. As security for the loan, Mixon granted a purchase money mortgage on the Property to Mortgage Electronic Registration Systems Inc. (MERS), solely as nominee for Top Flight. (ECF No. 1 at PageID.3.; ECF No. 1-2.) On or about July 21, 2011, MERS assigned the mortgage to BAC Home Loans Servicing LP, f/k/a/ Countrywide Home Loans Servicing, LP. (ECF No. 1 at PageID.3–4.)

On or about February 8, 2012, Mixon and BANA, as successor by merger to BAC Home Loans Servicing, LP, entered into a Loan Modification Agreement. (ECF No. 1 at PageID.4; ECF No. 1-4.) On July 21, 2014, an unauthorized and forged satisfaction of mortgage was created and purportedly executed by BANA. (ECF No. 1 at PageID.4; ECF No. 1-7.) On October 13, 2014, Mixon conveyed her interest in the Property to Antonio Mixon by quit claim deed. (ECF No. 1 at PageID.4; ECF No. 1-5.)

On December 2, 2014, Mixon recorded a notice of lis pendens against the Property with the Calhoun County Register of Deeds, stating that she had filed an action regarding the Property against BANA and several other defendants in the Calhoun County Circuit. (ECF No. 1 at PageID.4; ECF No. 1-6.) In fact, Mixon filed a complaint asserting a quiet title action in the Calhoun County Circuit Court on or about December 16, 2014, against BANA and John Does 1-20, which BANA removed to this Court on May 8, 2015, on the basis of diversity jurisdiction. *Mixon v. Bank of America N.A., et al.*, No. 1:15-cv-486 (W.D. Mich.) (*Mixon I*) (ECF No. 1; ECF No. 1-4.) Following the removal, BANA filed a motion to dismiss. Mixon had claimed that she paid the underlying debt secured by the mortgage in full, but BANA submitted documentation "demonstrating that not only has Plaintiff not paid

2

off the debt in question, but instead has failed to regularly make her scheduled mortgage payments." *Mixon I*, ECF No. 16 at PageID.515. In her June 26, 2015 Report and Recommendation, Magistrate Judge Carmody found that the balance of the loan as of March 5, 2015 exceeded $137,000.00 and that Mixon's arguments in support of her quiet title action were frivolous. *Id.* The Court adopted the Report and Recommendation and entered judgment for BANA. *Id.*, ECF Nos. 17 and 18.

Mixon sued BANA again on May 3, 2018, along with others, in this Court alleging various claims under federal and state law. *Mixon v. David Trott, et al.* (*Mixon II*), No. 1:18-cv-499 (W.D. Mich.). BANA filed a motion to dismiss arguing, among other things, that Mixon's claims were barred by res judicata and collateral estoppel. *Mixon II*, ECF No. 36. On August 1, 2018, Magistrate Judge Carmody issued a Report and Recommendation recommending that BANA's motion be granted because res judicata, or claim preclusion, barred Mixon's claims. *Id.*, ECF No. 56. The Court adopted the Report and Recommendation over Mixon's objections and entered judgment for BANA. *Id.*, ECF Nos. 114, 115. Mixon appealed the judgment to the Sixth Circuit, which affirmed the judgment in an unpublished order issued on August 28, 2019. *Id.*, ECF No. 118.

On July 15, 2015, while *Mixon I* was pending, the unauthorized and forged satisfaction of mortgage was recorded in the Calhoun County Register of Deeds. (ECF No. 1 at PageID.4–5; ECF No. 1-7.) On July 19, 2019, BANA assigned the mortgage to the Secretary of Housing and Urban Development (HUD). (ECF No. 1 at PageID.5; ECF No. 1-8.) On October 26, 2016, HUD assigned the mortgage to Wilmington Savings Fund Society, FSB as trustee for Stanwich Mortgage Loans Trust A. (ECF No. 1 at PageID.5; ECF No. 1-9.) Although Mixon had previously conveyed her interest in the Property to Antonio Mixon pursuant to the October 13, 2014 quit claim deed, on August 20, 2020, she executed a warranty deed purporting to convey her interest in the Property to Antonio Mixon. (ECF No. 1 at PageID.5; ECF No. 1-10.) Also on August 20, 2020, Antonio Mixon executed a warranty deed conveying the Property to [Kingdom Warriors Ministry]. (ECF No. 1 at PageID.6; ECF No. 1-11.) On March 4, 2021, Wilmington Savings Fund Society, FSB as trustee for Stanwich Mortgage Loans Trust A assigned the mortgage to BANA. (ECF No. 1 at PageID.6; ECF No. 1-12.)

*Bank of Am., N.A. v. Mixon*, No. 1:21-cv-430, 2021 WL 6550822, at *1–2 (W.D. Mich. Dec. 22, 2021), *adopted by* 2022 WL 168542 (W.D. Mich. Jan. 18, 2022).

### B.    BANA's 2021 Quiet Title Action and Mixon's Bankruptcy Filing

On May 24, 2021, BANA filed an action against Mixon and a Doe entity called Kingdom Warriors Ministry (KWM), Case No. 1:21-cv-430, seeking an order for, among other things, removal/expungement of the unauthorized/forged satisfaction of mortgage and quieting of title to

3

the Property (243 Devon Road, Battle Creek, MI 49015) by confirming the validity and priority of BANA's purchase money mortgage. Case No. 1:21-cv-430, ECF No. 1 at PageID.2. KWM was later found to be a fictious entity and terminated from the action. *Id.*, ECF No. 54. Thereafter, BANA filed a First Amended Complaint adding Antonio Mixon as defendant and adding a claim to foreclose the mortgage. *Id.*, ECF No. 60. On September 22, 2022, Mixon filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Michigan, assigned Case No. 22-1931 (Bankr. Case No. 22-1931). In light of the filing, the quiet title case was stayed on September 23, 2022. *Id.*, ECF No. 92. The case was reopened after the bankruptcy court granted BANA's motion for relief from the automatic stay on January 12, 2023. *Id.*, ECF Nos. 99, 100.

On May 4, 2023, the parties reached a settlement during an early settlement conference. *Id.*, ECF No. 109. The agreement called for, among other things, BANA's payment of a monetary sum to the Mixons in two equal payments; the Mixons' stipulation to BANA proceeding with a foreclosure by advertisement immediately following the recording of a stipulated order setting aside the unauthorized satisfaction of mortgage; and the Mixons' stipulation to waive all rights of redemption in the Property, to turn over possession of the Property to BANA no later than August 4, 2023, and to waive all defenses to eviction in the event they refused to voluntarily relinquish possession of the Property by August 4, 2023. *Id.*, ECF No. 118-1. Within days of reaching the agreement, the Mixons sought to obtain more money from BANA and filed a motion to withdraw the settlement agreement, which I recommended that the Court deny. *Id.*, ECF Nos. 111, 123. On December 13, 2023, Judge Neff held an evidentiary hearing to address the Mixons' objections to my June 6, 2023 Report and Recommendation recommending that the Court deny the Mixons'

motion to withdraw the settlement.[1] *Id.*, ECF No. 144. On December 14, 2023, Judge Neff entered an order overruling the Mixons' objections and approved and adopted the Report and Recommendation, as modified to require the parties to update the dates in the settlement documents. *Id.*, ECF No. 145. On January 16, 2024, the Court entered an Order noting that BANA had complied with the December 14, 2023 Order directing the parties to provide new dates for the settlement agreement but the Mixons had failed to present any new dates. Accordingly, the Court ordered BANA to deliver the revised settlement agreement and stipulation and order setting aside the unauthorized satisfaction of the mortgage to each of the Mixons on or before January 23, 2024 and ordered the Mixons to return the fully executed and notarized settlement agreement by February 1, 2024. The order advised the Mixons that if they failed to return the fully executed settlement agreement or stipulation and order, the Court would deem those documents signed as of February 2, 2024. *Id.*, ECF No. 149.

Over the next several months, the Mixons filed numerous motions for relief from the December 14, 2023 and January 16, 2024 Orders, a motion for an evidentiary hearing, and a motion to withdraw the settlement, all of which the Court denied. *Id.*, ECF Nos. 159, 161, 170, 171, 176, 178, 182. On April 25, 2024, the Court entered a stipulation and order, deemed signed by the parties as of February 2, 2024, expunging the unauthorized satisfaction of mortgage recorded against the Property in the Calhoun County Register of Deeds, and dismissing the case with prejudice. *Id.*, ECF No. 185. The stipulation set forth the previously-stated settlement terms, except that the date for the Mixons to vacate the Property was revised to April 23, 2024. *Id.* The Mixons

---

[1] Mixon, who by then was incarcerated as a result of her conviction in Case No. 1:21-cr-203-2 (W.D. Mich.) of concealment of a fact affecting entitlement to Supplemental Security Income Benefits, 42 U.S.C. § 1383a(a)(3)(B), was afforded an opportunity to attend the hearing from the prison facility by video but elected not to participate. Case No. 1:21-cv-430, ECF No. 145 at PageID.1516 n.1.

did not appeal the order, although they subsequently filed a motion to declare the stipulation null and void and a motion to reopen the case, which were rejected and/or denied. *Id.*, ECF Nos. 187, 189, 196.

### C.    The Adversary Proceeding

On January 8, 2025, BANA, through the Trott firm, gave notice to Mixon of a non-judicial foreclosure of the mortgage pursuant to a sheriff's sale to be held on February 13, 2025. Bankr. Case No. 22-1931, Doc #108-1. On January 14, 2025, Mixon filed an emergency motion in her bankruptcy case to restrain the foreclosure sale from occurring. *Id.*, Doc #108. On January 15, 2025, the bankruptcy court denied the motion, finding it "patently without merit." *Id.*, Doc #109. Mixon filed another emergency motion in her bankruptcy case on January 21, 2025, which the bankruptcy court denied on January 23, 2025. *Id.*, Docs ##112, 113. The same day Mixon filed her second emergency motion, she filed an adversary complaint, assigned Case No. 25-80008 (Adv. Proc. 25-80008).

On February 25, 2025, Mixon filed an emergency motion for a temporary restraining order and permanent injunction in the adversary proceeding against Defendant Clark. In her motion, Mixon described a fraudulent scheme by Clark from December 1, 2024 through February 20, 2025 in which Clark, among other things, misrepresented herself as Mixon and as Mixon's attorney and committed mail, wire, and address fraud. Adv. Proc. 25-80008, Doc #14. On March 10, 2025, the bankruptcy court entered a memorandum of decision and order granting the defendants' motion to dismiss pursuant to the preclusion doctrines of *res judicata* and collateral estoppel. *Id.*, Doc. #16.

### D.    State-Court Eviction Action

On September 5, 2025, BANA filed an eviction complaint against Mixon and all other occupants in the 10th Judicial District Court seeking possession of the Property. Case No. 1:25-

6

cv-1183, ECF No. 1-1. Mixon removed the case to this Court on October 3, 2025, on the basis of diversity jurisdiction. *Id.*, ECF No. 1. On November 4, 2025, the Court remanded the case to the 10th District Court. *Id.*, ECF No. 13. On December 10, 2025, the 10th District Court entered a judgment granting BANA possession of the Property.

### E.    The Present Case

Mixon initiated the present action on November 24, 2025. (ECF No. 1.) She filed her First Amended Complaint on January 21, 2026 (ECF No. 12), raising allegations that mirror those set forth in her emergency motion for injunctive relief filed in the adversary proceeding on February 25, 2025. Citing documents attached to her pleading, Mixon alleges that BANA, Trott, and Clark committed wire, mail, and address fraud and identity theft by taking out a mortgage loan in Mixon's name, selling the mortgage loan to NewRez, and allowing NewRez to foreclose on the mortgage. (*Id.* at PageID.185–86.) Mixon alleges that Clark essentially hid this transaction from Mixon by representing to NewRez that she was both Mixon and Mixon's attorney, using her own address at the Trott firm so that Mixon would not receive any documents or correspondence from NewRez, and intercepting Mixon's mail. (*Id.* at PageID.186.) Mixon alleges that Trott and Clark furthered this scheme by listing Mixon's childhood phone number rather than her current phone number with NewRez and causing the alleged fraudulent mortgage account with NewRez to be listed as a "litigated account," ensuring that NewRez would never contact Mixon. (*Id.* at PageID.187.) Mixon alleges that she was harmed by all of this because it impeded her from paying the mortgage or taking other steps, including accessing the "Homeowner Assistance Solutions" tab on NewRez's website, that could have prevented the foreclosure. (*Id.* at PageID.188.) While Mixon acknowledges the settlement agreement in Case No. 1:21-cv- 430 allowing BANA to foreclose on the mortgage, she alleges that "BANA chose not to foreclose on . . . Mixon's home[,]"

and instead, "NewRez wrongfully and illegally foreclosed on . . . Mixon's home[.]" (*Id.* at PageID.189.) For relief, Mixon seeks, among other things, an order directing removal of the "fraudulent Sheriff's Deed and any related filings from the public land records" and voiding any foreclosure documents or actions and judgments of possession to BANA in the state-court eviction action. (*Id.* at PageID.183.)

The documents attached to the First Amended Complaint, as well as documents filed in the prior cases cited above, tell another story—one which lays bare Mixon's wildly imaginative allegations as frivolous. First, no new loan or mortgage was created and sold to NewRez. Instead, as explained in the letter Mixon attached as Exhibit B, BANA transferred the servicing of the existing mortgage loan to NewRez/Shellpoint, nothing more. (ECF No. 12-2 at PageID.242.) In fact, the loan information contained on the third page of the document identifies January 28, 2010, as the loan origination date. (*Id.* at PageID.244.) The letter also warned any recipient who might have filed bankruptcy and received a discharge that the communication was simply to advise of the status of the loan and was neither a demand for payment nor a notice of personal liability. (*Id.* at PageID.246.) Similarly, the January 1 and February 1, 2025 mortgage statements (that Mixon admits were not sent to her) state: "Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy. We are sending this statement to you for informational purposes only. It is not an attempt to collect a debt against you." (ECF No. 12-4 at PageID.260; ECF No. 12-5 at PageID.263.) Second, BANA—not NewRez— foreclosed the mortgage. Bankr. Case No. 22-1931, Doc #108-1. In fact, the Sheriff's Deed conveying the Property to BANA that Mixon attached as Exhibit I recites that the January 28, 2010 mortgage was last assigned to BANA on March 4, 2021. (ECF No. 12-9.) Consistent with the Sheriff's Deed, BANA—not NewRez—sued in state court to recover possession of the Property.

8

Case No. 1:25-cv-1183. In short, while NewRez might have facilitated the foreclosure sale, BANA foreclosed the original mortgage consistent with the prior settlement agreement.

## II.   Discussion

### A.    Standing

Although BANA raises Mixon's lack of standing under Michigan law to challenge the validity of the foreclosure sale and to bring claims relating to the Property based on her failure to redeem within the statutory period following the foreclosure, no Defendant raises Mixon's standing under Article III to pursue her claims in federal court. As courts of limited jurisdiction, "federal court[s] must proceed with caution in deciding that [they have] subject matter jurisdiction." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1252 (6th Cir. 1996). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Regardless of whether the parties raise the issue, a federal court is obligated to examine its subject matter jurisdiction *sua sponte*. *See City of Kenosha v. Bruno*, 412 U.S. 507, 511 (1973); *Norris v. Schotten*, 146 F.3d 314, 324 (6th Cir. 1998).

Article III of the Constitution limits the "judicial Power" of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Standing is one component of Article III jurisdiction. It is a threshold inquiry because the elements of standing are "an indispensable part of the plaintiff's case." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). If a plaintiff lacks Article III standing, the court has no subject matter jurisdiction to hear the claim. *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015); *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005) (citing

9

*Lujan*, 504 U.S. at 560). To prove standing, a plaintiff must show that she suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be "fairly traceable" to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). An injury in fact requires "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). "[T]he standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into a vehicle for the vindication of the value interests of concerned bystanders." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (internal quotation marks and citations omitted).

To meet Article III's "concrete injury" requirement, the "injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 578 U.S. at 340. Both tangible and intangible harms can satisfy this requirement. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). "[T]raditional tangible harms, such as physical harms and monetary harms," "readily qualify as concrete injuries under Article III." *Id.* The issue here is whether, at the time of foreclosure, Mixon had a legally protected interest that could have been injured. The Sixth Circuit has cautioned district courts not to stray into merits territory when examining Article III standing. *See CHKRS, LLC v. City of Dublin*, 984 F.3d 483 (6th Cir. 2021). In *CHKRS*, the plaintiff business alleged that the defendant city violated the Takings Clause of the Fifth Amendment by tearing out its driveway and replacing it with a defective driveway without paying just compensation. At the time, the plaintiff had leased the property but later purchased it. *Id.* at 485. The district court held that the plaintiff lacked standing because in previous litigation with the property owner, state courts had determined that the plaintiff lacked a protectable interest in the condemnation proceeds as a lessee under the lease. *Id.* at 487–

10

88. The Sixth Circuit held that the district court erred because the plaintiff "alleg[ed] a colorable interest in the property for its takings claim." *Id.* It observed that the complaint appeared to plead "an obvious Article III injury" because the city's agents allegedly trespassed on and damaged the leased premises and the plaintiff, as a lessee of the property, had a legally protected interest under the Takings Clause. *Id.* at 488–89. The court of appeals found that the district court erred by conflating the standing and merits inquiries. The court stated that once a plaintiff has alleged a "'colorable' or 'arguable' claim that the defendant has invaded a legally protected interest, the plaintiff has met this element of an Article III injury." *Id.* at 489 (citing *Reoforce, Inc. v. United States*, 853 F.3d 1249, 1264 (Fed. Cir. 2017); *Booker-El v. Superintendent, Indiana State Prison*, 668 F.3d 896, 900 (7th Cir. 2012)).

While at first glance it might appear that the holding in *CHKRS* suggests that Mixon passes the Article III test, the present circumstances are distinguishable. Conceivably, Mixon could argue that she had a legally protected interest in the Property as the mortgagor with a right of redemption or even as a tenant in possession. But her own allegations preclude even a "colorable" or "arguable" claim that the defendants invaded a legally protected interest. In her pleading, Mixon specifically acknowledges the settlement agreement from Case No. 1:21-cv-430. (ECF No. 12 at PageID.189.) Those terms included that: (1) BANA could proceed with a foreclosure by advertisement; (2) the Mixons waived any and all rights of redemption from the foreclosure as it relates to the property; (3) the Mixons would turnover the Property to BANA by April 23, 2024; and (4) the Mixons waived any and all defenses to eviction in the event they failed to leave the Property by April 23, 2024. Case No. 1:21cv430, ECF No. 185. Unlike *CHKRS*, Mixon's First Amended Complaint, with its reference to the settlement agreement, establishes a lack of standing because it shows that Mixon had bargained away her interests in the Property. Thus, at the time of the events alleged in the First Amended Complaint, Mixon had no legally protected interest in the

11

Property that could have been invaded by Defendants' acts. She therefore lacks standing to pursue this action.

Alternatively, I recommend that the Court find the First Amended Complaint subject to dismissal for lack of subject matter jurisdiction because its claims "'clearly appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction or [are] . . . wholly insubstantial and frivolous.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946); *see also Apple v. Glenn*, 183 F.3d 477, 479–80 (6th Cir. 1999) (holding that that a court may dismiss an action *sua sponte* "for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion"). As set forth above, Mixon's factual allegations are made up out of whole cloth, undermined by her own exhibits, and patently frivolous.

**B.  Failure to State a Claim**

I address Defendants' Rule 12(b)(6) arguments as alternative grounds for dismissal.

**1.  Applicable Standard**

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the allegations therein in a light most favorable to the plaintiff to determine whether they state a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). When considering a Rule 12(b)(6) motion, the court must dismiss a claim unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

In general, when deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's review is limited to the four corners of the pleading at issue. Fed. R. Civ. P 12(d); *see also Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1139 (W.D. Mich. 2019) (noting that "[i]n general, in deciding a Rule 12(b)(6) motion to dismiss the court is limited to considering only the pleadings") (citing *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)). Nonetheless, it is well established that, in some circumstances, a court may consider matters beyond the pleadings without converting the motion to one for summary judgment under Rule 56. Examples include "any exhibits attached [to the Complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to

dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

### 2.    Claim and Issue Preclusion

NewRez, BANA, and the Trott Defendants argue that Mixon's claims are barred by the doctrines of res judicata and collateral estoppel, otherwise known as claim and issue preclusion, based on the 2018 and 2021 cases and Mixon's bankruptcy adversary proceeding. Because all three of these cases were decided by federal courts, this Court must apply federal law in determining the preclusive effect of those judgments. *Golliday v. JPMorgan Chase Bank, N.A.*, No. 1:12-CV-855, 2013 WL 126215, at *2 (W.D. Mich. Jan. 9, 2013) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (stating that "[t]he preclusive effect of a federal-court judgment is determined by federal common law")).

The doctrine of claim preclusion provides that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994); *see Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982); *Bowen v. Gundy*, No. 96-2327, 1997 WL 778505, at * 1 (6th Cir. Dec. 8, 1997). Claim preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Claim preclusion applies when: (1) the previous lawsuit ended in a final judgment on the merits; (2) the previous lawsuit was between the same parties or their privies; and (3) the previous lawsuit involved the same claim or cause of

14

action as the present case. *Allen*, 449 U.S. at 94; *accord Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

"Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892. Issue preclusion applies where: (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding. *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace & Agric. Implement Workers*, *UAW*, 97 F.3d 155, 161 (6th Cir. 1996).

I conclude that neither doctrine applies to the claims Mixon alleges in her complaint. Regarding claim preclusion, the Supreme Court has observed that it "generally 'does not bar claims that are predicated on events that postdate the filing of the initial complaint.'" *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 414 (2020) (quoting *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 600 (2016) (internal quotation marks omitted), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022)). The Court reasoned that "[e]vents that occur after the plaintiff files suit often give rise to new '[m]aterial operative facts' that 'in themselves, or taken in conjunction with the antecedent facts,' create a new claim to relief." *Id.* at 415 (quoting Restatement (Second) § 24, Comment f, at 203). Here, Mixon's present factual allegations, while meritless, concern events that occurred after the 2018 and 2021 cases had been filed and concluded. Moreover, claim preclusion cannot apply to the 2021 case because it did not end in a final judgment on the merits; rather, the parties settled the case. As for the adversary proceeding, while it is true that Mixon asserted her present allegations in her

motion for injunctive relief, the bankruptcy court declined to address them because "the more recent claims of misconduct, to the extent they are not barred by issue preclusion, arose post-petition, have no conceivable effect on the bankruptcy estate or bankruptcy case, and fall outside the court's subject matter jurisdiction." Adv. Pro. 25-80008, Doc #16 at 6. The court further observed that because Mixon had received her discharge and the Chapter 7 trustee had filed his final account, "[t]he court's role in this dispute has reached its conclusion." *Id.*

As for issue preclusion, the only finding that could be in dispute is Judge Neff's finding from the 2021 case that the Mixons and BANA entered into a binding settlement agreement, but Mixon does not appear to dispute the settlement agreement's validity or BANA's right to foreclose the mortgage under that agreement.[2] (ECF No. 12 at PageID.189–90.) Thus, I conclude that claim and issue preclusion do not bar Mixon's claims.

### 3. Federal-Law Claims

Mixon's federal claims are easily dispatched.

First, Mixon cannot assert claims under the mail or wire fraud statutes because they are criminal statutes that do not create a private right or action. *Sefa v. Kentucky*, 510 F. App'x 435, 438 (6th Cir. 2013); *see also Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) ("The district court also properly concluded that Saro possessed no private right of action against Brown for alleged violations of 18 U.S.C. §§ 1341 & 1343. Violations of these sections of the federal criminal code do not give rise to independent, private causes of action."); *Ryan v. Ohio Edison Co.*, 611

---

[2] It is questionable whether the settlement agreement could satisfy the requirements for issue preclusion for any issue raised in the 2021 case other than the existence of the settlement agreement itself. *See Arizona v. California*, 530 U.S. 392, 414 (2000) (observing that "settlements ordinarily occasion no *issue preclusion* (sometimes called collateral estoppel), unless it is clear . . . that the parties intend their agreement to have such an effect" and that "consent judgments ordinarily support claim preclusion but not issue preclusion" (quoting 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4443, pp. 384–385 (1981))).

F.2d 1170, 1178–79 (6th Cir. 1979) (holding that 18 U.S.C. § 1341 does not create a private cause of action).

Second, Mixon has no claim against Defendants under 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Defendants—a bank, a law firm and one of its attorneys, and a mortgage servicer—are private parties, not state actors. Because Mixon fails to allege any fact suggesting that Defendants could be deemed state actors, this claim lacks merit.

Third, Mixon's FDCPA claims fail as to BANA because it owned the debt it was seeking to collect and thus does not qualify as a "debt collector" under 15 U.S.C. § 1692a(6). *See Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003). More importantly, the claim regarding the "debt" upon which Mixon founds her FDCPA claims—"a mortgage loan that Trott Law P.C., NewRez, BANA and Michelle K. Clark, fraudulently and illegally created" (ECF No. 12 at PageID.218)—is a frivolous allegation, as explained above. These claims are baseless.

Fourth, the RICO claim fails for a number of reasons, but two will suffice. First, Mixon fails to allege "a pattern of racketeering activity," which is defined as "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). As her two predicate acts, Mixon alleges mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1341, but her allegations fall well short of the heightened pleading requirements of Rule 9(b) applicable to a mail or wire fraud claim. That rule requires that a complaint: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564,

570 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)).

More importantly, Mixon fails to allege a fraudulent scheme. "'A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005)). The First Amended Complaint sets forth no plausible allegation that Defendants used a false, deceptive, or fraudulent pretense or representation to deprive Mixon of money or property. Second, Mixon cannot satisfy RICO's continuity requirement. The alleged scheme involved the creation of a single mortgage loan, involved a single victim, and occurred over the course of a few months. This is not enough to "pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237–39 (1989); *see Vemco, Inc. v. Camardella*, 23 F.3d 129, 134–35 (6th Cir. 1994) (concluding that the continuity requirement was not satisfied because the instrumentality was a single construction job with a single victim, and the scheme was complete once the defendant received the money it was requesting in the billing statements); *Thompson v. Paasche*, 950 F.2d 306, 311 (6th Cir. 1991) (holding that a scheme involving the sale of property ceased when the property was sold and there was no showing of continuing opportunity or scheme); *McCormick v. Franklin Cnty. Court of Common Pleas Domestic Div.*, No. 2:19-cv-3329, 2020 WL 5513566, at *3 (S.D. Ohio Sept. 14, 2020) ("Critically, '[a] single, fraudulent scheme to accomplish a single objective does not establish RICO continuity.'" (quoting *Dimov v. EMC Mortg. Corp.*, No. 1:09-CV-211, 2010 WL 2506717, at *7 (E.D. Tenn. June 17, 2010))).

Fifth, Mixon's TILA claim fails because its factual premise—Defendants created and transferred an unauthorized mortgage loan in Mixon's name—is frivolous. In short, the only loan related to the Property that ever existed was the loan created on January 28, 2010.

Finally, Counts XVI and XVII (mistakenly designated Count II) allege claims for intentional infliction of emotional distress and negligent infliction of emotional distress, but do so "[u]nder Federal Tort Law." (ECF No. 12 at PageID.235–36.) These claims do not arise under federal law, but to the extent Mixon intends to invoke the Federal Tort Claims Act (FTCA), her claims fail because Defendants are not federal employees. *See Petty v. United States*, 80 F. App'x 986, 989 (6th Cir. 2003) ("As for the Detroit police officers who entered the Petty home, their actions cannot be the basis of liability under the FTCA because they are not federal employees.").

### 4.    State-Law Claims

Because Mixon has asserted her state-law claims pursuant to supplemental jurisdiction, the Court must determine whether to decide or entertain them or dismiss them without prejudice. 28 U.S.C. § 1367(c)(3). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction, and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Id.* at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be

19

exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

Although I would ordinarily recommend that the state-law claims be dismissed without prejudice, given the litigation history set forth above, allowing Mixon another opportunity to prolong this matter and impede BANA's enforcement of its rights to the Property would be contrary to the interests of justice. Thus, the state-law claims should be decided in this proceeding. Moreover, given my conclusion that Mixon's claims are frivolous, I recommend that the Court summarily conclude that the state-law claims are frivolous, as they all depend on the unfounded allegation that Defendants created a new mortgage loan in Mixon's name.

### C.    Filing Restriction

Based on the foregoing analysis, I recommend that the Court conclude that the First Amended Complaint violates Federal Rule of Civil Procedure 11(b)(1) as it was filed for an improper purpose, namely, to cause unnecessary delay. Mixon's activity in the cases discussed above shows that, if nothing else, she is a vexatious litigator who is likely to file additional litigation to delay her surrender of the Property to BANA. Although this Court has already deemed Mixon a restricted filer to a limited extent, a further restriction is in order.

In restricting filing, a court may not absolutely bar an individual from filing an action in federal district court. *See Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996). Nonetheless, "[a] district court has the authority to issue an injunctive order to prevent prolific and vexatious litigants from filing pleadings without first meeting pre-filing restrictions." *Stewart v. Fleet Fin.*, No. 99-2282, 2000 WL 1176881, at *2 (6th Cir. Aug. 10, 2000) (citing *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998), and *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987)).

Accordingly, I recommend that the Court impose a limited restriction barring Mixon from filing any future action in this Court relating to the subject matter asserted the instant case or in Case Nos. 1:15-cv-486, 1:18-cv-499, or 1:21-cv-430, regardless of whether she has paid the filing fee. *See Apple*, 183 F.3d at 479. The restriction should further provide that upon receipt of any lawsuit in this Court by Mixon, a magistrate judge must review it to determine whether it relates to the listed cases and, if so, direct the Clerk to reject it.

## IV.  Conclusion

For the foregoing reasons, I recommend that the Court **dismiss** this action because Mixon lacks Article III standing and/or because the Court lacks jurisdiction under the standard set forth in *Apple*, *supra*. Alternatively, I recommend that the Court **grant** Defendants' motions (ECF Nos. 14, 18, and 22) and dismiss the First Amended Complaint for failure to state a claim. Finally, I recommend that the Court impose the limited filing restriction (or similar) proposed above.

Dated: June 2, 2026                                 /s/ Sally J. Berens
                                                    SALLY J. BERENS
                                                    U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).